*chetti v. Bierman,* 128 N.J.Super. 290, 319 A.2d 781 (1974).

Because questions of fact remain, Moorehead's motion for summary judgment must be denied.

**William B. WEINBERGER, On Behalf of Himself and All Others Similarly Situated, Plaintiff,**

**v.**

**David JACKSON, Ronald Conway, David Liggett, David Zacarias, Donald T. Valentine, Susan Jackson, Sidney L. Spiegel, Sequoia Capital II, Altos Computer Systems, and L.F. Rothschild, Unterberg, Towbin and Robertson, Colman, Stephens & Woodman, Individually, and as Representatives of a Defendant Underwriter Class, Defendants.**

No. C–83–20411–WAI.

United States District Court, N.D. California.

Aug. 7, 1984.

William S. Lerach, John E. Grasberger, Anita Meley Laing, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., for plaintiff.

Charlene S. Shimada, Christine E. Sherry, Rebecca A. Lenaburg, William B. Hirsch, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., John W. Fowler, McCutchen, Doyle, Brown & Enersen, San Jose, Cal., for defendants Altos Computer Systems, David Jackson, Ronald Conway, David Liggett, David Zacarias.

Bruce G. Vanyo, Wilson, Sonsini, Goodrich & Rosati, A Professional Corporation, Palo Alto, Cal., for defendants Donald T. Valentine, and Sidney L. Spiegel.

Gary H. Anderson, Cydney A. Hurowitz, Pillsbury, Madison & Sutro, San Francisco, Cal., Randolf J. Rice, Pillsbury, Madison & Sutro, San Jose, Cal., for defendants L.F. Rothschild, Unterberg, Towbin and Robertson, Colman, Stephens & Woodman.

## ORDER

INGRAM, District Judge.

Plaintiff moves for certification of plaintiff and defendant-underwriter classes pursuant to Fed.R.Civ.P. 23 and Local Rule 200–6 [1] in this action for violations of the federal securities laws and state claims.[2]

---

1. Local Rule 200–6, United States District Court, Northern District of California, provides:
 "The party seeking to maintain an action as a class action shall file a motion for a determination whether it may be so maintained pursuant to Rule 23(c)(1) within six months of

2. See note 2 on page 842.

## I. ORDER OF CERTIFICATION

In accordance with the discussion herein:

1. a plaintiff class is certified under Fed.R.Civ.P. 23(b)(3) as comprising all purchasers of the common stock of defendant Altos Computer Systems who made such purchases between November 4, 1982 and conditionally to January 20, 1983, inclusive, but excluding, as to the claims under the California Corporations Code (Sections 25400 and 25500),[3] plaintiff purchasers who did not purchase the initial offering of Altos stock. Class certification for those purchasers seeking relief under California state fraud and negligence claims shall be subject to amendment or alteration at such time as it appears on motion of the parties, or otherwise, that litigation thereof proves unmanageable or not otherwise suitable for class action prosecution. Excluded entirely from the plaintiff class are defendants herein, members of defendants' immediate families, any entity controlled by defendants, and defendants' legal representatives, heirs, successors and assigns;

2. a defendant-underwriter class is certified, pursuant to Fed.R.Civ.P. 23(b)(3), with respect to the claims brought under § 11 of the 1933 Securities Act, 15 U.S.C. § 77k, and pursuant to Fed.R.Civ.P. 23(b)(1), with respect only to the issue of whether the subject Registration Statement and Prospectus contained material misstatements or omissions that constitute violations of § 12(2) of the 1933 Securities Act, 15 U.S.C. § 77*l*. Defendants L.F. Rothschild, Unterberg, Towbin, and Robertson, Colman, Stephens and Woodman shall represent the entire underwriter class.

## II. BACKGROUND

This action alleges material misrepresentations and omissions in the November 4, 1982, Registration Statement and Prospectus of a public offering of 3.3 million shares of defendant Altos Computer Systems ("ALTOS"), a manufacturer of personal computers.

Plaintiff William Weinberger purchased 165 shares of Altos pursuant to the November offering at a cost of $21 per share. In six claims for relief,[4] plaintiff avers, *inter alia*, that the defendants failed to disclose that ALTOS' latest computer models were not yet ready for shipment due to production difficulties, were encountering software design problems, and were encountering higher than anticipated advertising and promotional costs.[5] As a result, plaintiff claims the offering and open market prices of Altos stock were artificially inflated.

## III. DISCUSSION

Federal securities laws class actions are enjoying great popularity based largely, it appears, upon the rise in the number of new high technology stock issues.[6] This

---

the filing of that party's first pleading, or at such later time as the assigned judge may order or permit."

**2.** Federal jurisdiction is based upon section 22 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77v, as amended, and upon section 27 of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, as amended. The court has pendent jurisdiction over the remaining state law claims.

**3.** Claims under sections 25401 and 25501 of the California Corporations Code were dismissed with prejudice pursuant to order of this court filed April 2, 1984.

**4.** The claims for relief in the First Amended Complaint are:

Count I: Violations of section 11 of the Securities Act;
Count II: Violations of section 12(2) of the Securities Act;
Count III: Violations of section 10(b) of the Exchange Act and of Rule 10b–5 promulgated thereunder;
Count IV: Violations of California Corp. C. §§ 25400 and 25500
Count V: Fraud and deceit; and
Count VI: Negligent misrepresentation.

**5.** First Amended Complaint ¶ 24(a)–(h).

**6.** In the first quarter of 1983, 597 companies raised $9 billion through public offerings. *See* Lopata and Wait "Going Public: Making the Decision," *Inc.* Magazine, Dec. 1983.

judicial district is currently entertaining numerous cases concerning Stock Issues of companies located in the Santa Clara county area known as "Silicon Valley."[7] A review of those cases, in particular their pleadings and procedural posture, indicates a need to promote consistency and judicial economy toward resolving this complex litigation. I endeavor to set some parameters in this discussion with regard to class certification in hope of furthering these ends.

At the outset, initial certification of a class is a limited matter. A court must not consider the merits of the underlying action when determining class certification. *See Eisen v. Carlisle-Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) (*Eisen* IV); *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975) *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The rationale of the federal and local class action rules is based largely on imparting early notice of the pendency of an action and has nothing to do with whether a plaintiff may ultimately prevail. A defendant can be assured, at the least, that the onus of cost and implementation of notice placed upon a plaintiff as well as the general complexity of the case will deter the filing of frivolous class actions. Further, a defendant is never denied the opportunity to challenge the merits of the action by appropriate pre-trial motions.

Moreover, a cursory reading of Rule 23 indicates that class certification is, by definition, transient:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. *An order under this subsection may be conditional, and may be altered or amended before the decision on the merits.* Fed.R.Civ.P. 23(c)(1).[8] " (Emphasis added.)

Finally, I do not believe the parties opposing class certification should engage in assaults upon the character of either the prospective class representative or his counsel. Nor do I believe lengthy and expensive discourses on well-settled principles or string citations are necessary to convey a point. In this case, plaintiff's opening brief for certification of a plaintiff class adequately set forth, in 25 pages, compliance with Rule 23, as did plaintiff's 23-page brief regarding suitability of a defendant class. The defendants' response was a bludgeoning 63 pages[9] of implicit epithets levied against plaintiff and his able counsel and, as will be discussed below, legally unsupportable contentions given this stage of the proceeding. Plaintiff was constrained to file a 67-page reply brief to protect the integrity of his position. Defendants then filed a 37-page rebuttal memorandum, reiterating many issues. A great amount of unnecessary language has been added to this matter which tends to create an atmosphere of acrimony which is incompatible with conducting complex litigation. *See e.g. Peil v. Speiser,* 97 F.R.D. 657, 661 (E.D.Pa.1983) ("Name-calling and insulting innuendos serve no purpose in a lawsuit, tend to distract parties from the

---

7. *See, e.g., Louis Berg v. Collagen Corporation, et al,* No. C–84–20027–WAI; *McFarland v. Memorex Corp.,* No. C–79–2007 WAI; *In re Apple Computer Securities Litigation,* No. C–84–20148–WAI; *In re Victor Technologies Securities Litigation,* No. C–83–3906–RFP; *In re Fortune Systems Securities Litigation,* No. C–83–3348–WHO.

8. See also note 1, *supra.*

9. Local Rule 220–4 allows the filing of briefs in excess of 25 pages with prior leave of court. As a practical matter, applications to file excessive briefs are made well in advance of the court's consideration of the issues of the motion to which the brief pertains. Moreover, the application is nearly always made on the due date of the brief, and is therefore accompanied by the already drafted excessive brief. The rule is thus subject to abuse in that a court must make a determination of the need for lengthy arguments prior to consideration of the issues and after applicants have spent much time and money preparing their arguments. In all fairness to the litigants and their counsel, the court believes every opportunity should be given to present their positions, but each should endeavor to police itself and emphasize concision over girth. However, with respect to this case, all further applications to file excessive briefs must be made at least 7 days prior to the due date for the brief.

real issues at hand and create an atmosphere of ill-will not conducive to the proper conduct of a complex action ... where cooperation among counsel is especially necessary."). The balance of this action should be conducted with these ground rules in mind. Counsel are directed to read and comply with the mandate of Fed.R. Civ.P. 11 (eff. Aug. 1983), prior to filing any other pleadings or motions with the court.

### A. *Plaintiff Class Certification.*

Plaintiff seeks certification of the following plaintiff class:

> "All persons and entities who purchased the common stock of defendant Altos Computer Systems from November 4, 1982 through January 20, 1983, inclusive."

The court makes the following findings in conformity with Fed.R.Civ.P. 23(a).

#### 1. *Numerosity.*

■ The proposed plaintiff class consists of purchasers of at least 3.3 million ALTOS shares. As of June 24, 1983, ALTOS had 1227 shareholders.[10] The court concludes that the class is so numerous that joinder of all class members is impracticable.

#### 2. *Commonality.*

■ The gravaman of the operative complaint[11] alleges liability based upon material misstatements and omissions in the ALTOS Registration Statement and Prospectus. As one court noted:

> "Confronted with a class of purchasers allegedly defrauded over of period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendants' course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue

may profitably be tried in one suit." *Blackie v. Barrack,* 524 F.2d at 902, and cases cited therein.

This constitutes a "common course of conduct" indicating common questions of both law and fact. *Harris v. Palm Springs Alpine Estates,* 329 F.2d 909, 914 (9th Cir. 1964); *McFarland v. Memorex Corp.,* 96 F.R.D. 357, 362 (N.D.Cal.1982).

#### 3. *Typicality.*

> "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damage, the size or manner of [stock] purchase, the nature of the purchaser, and even the specific document influencing the purchase will not render a claim atypical in most securities cases." 5 Newberg on Class Actions, § 8816, at 850 (1977).

■ Plaintiff's claims are typical of the putative class insofar as the relief sought arises from the same misrepresentations or omissions. As the typicality requirement should be loosely construed, *Newberg, supra,* it is no barrier that plaintiff may have purchased ALTOS stock pursuant to the initial offering yet he seeks to represent purchasers in the aftermarket. *See Wolfson v. Solomon,* 54 F.R.D. 584, 588 (S.D.N.Y.1972). Defendants objections to plaintiff's claims as "atypical" are better dealt with under the rubric of predominance of individual versus class issues, discussed *infra.* 5 Newberg at 850. I therefore conclude that plaintiff has met the typicality requirement of Rule 23(a)(3).

#### 4. *Adequacy.*

■ Two criteria exist for determining the adequacy of representation of a class: 1) the named representative must appear to be able to prosecute the action vigorously through qualified counsel, and 2) the representative must not have antagonistic or

---

**10.** "Value Line," June 24, 1984, attached to Adler declaration as Exh. F.

**11.** The operative complaint is the First Amended Complaint per order of this court of even date herewith, denying defendants' motion to dismiss Counts II and IV.

conflicting interests with the unnamed class members. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). *See also Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977).

▉ The emphasis has been and should be placed on whether the representative's counsel is capable. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968), *class upheld on remand*, 52 F.R.D. 253 (S.D.N.Y.1971), *rev'd* 479 F.2d 1005 (2d Cir.1973), *vacated* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*Eisen* II). Mr. Weinberger's counsel are competent to handle this action and have demonstrated their abilities to do so in both their written and oral presentation.

Defendants disagree and have gone to great lengths to besmirch Mr. Weinberger's and his counsel's ability to adequately represent the putative class. Defendants contend, *inter alia*, that Weinberger is too old, too sophisticated, failed to independently investigate the facts prior to filing suit, has a habit of filing frivolous suits, has not cooperated in discovery and that Mr. Weinberger is engaged in too many other actions to devote adequate time to this action. Defendants also contend that Mr. Weinberger's failure to rely upon the offering materials[12] as opposed to the class whom he seeks to represent and his unique due diligence duties resulting from his level of sophistication are at odds with class interests. The latter two contentions are best covered under the issue of predominance of common over individual issues because they do not appear to compromise the positions of the putative class. I find that none of the remaining contentions bears upon the question of whether this suit will be adequately and vigorously prosecuted or whether a disabling conflict exists.

Personal qualifications or motives of the proposed class representative are not determinative of the adequacy of the representative. *Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 473 (E.D.Pa.1973). A complex securities action cannot be founded upon an investigation of a litigant. *See, e.g., Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 175 (E.D.Pa.1979) (in complex securities case, putative class representative need not have personal knowledge of case facts). It is counsel, who must make a preliminary investigation of the matter from a legal perspective, that determines whether filing suit is advisable.[13] I am not convinced that the pendency of other suits, only two of which appear to have been concluded and whose facts regarding their merit are in serious dispute, indicates Mr. Weinberger habitually files pointless lawsuits. Finally, I find no indication upon a complete review of the case file that Mr. Weinberger has failed to cooperate in discovery. Defendants cannot expect the court to conclude that, because Mr. Weinberger and his counsel have carefully crafted his discovery responses, he is not complying with the rules of discovery. Defendants' contentions to this effect are better left to a Motion to Compel.

Regarding lack of time to devote to the litigation, as a practical matter, once the action has been commenced, the action is in the hands of counsel who is motivated at the least by the contingency that payment of his fee is based upon success of the case. *See Newberg, supra*, at 859. Even if it were necessary for Mr. Weinberger to be available at a level as defendants imply, since they have not made it entirely clear, I find nothing in the record of this case that shows any such impediment at this time.

The court is therefore satisfied that the numerosity, commonality, typicality and adequacy requirements of Rule 23(a) have been met.

---

12. Weinberger Deposition at 48:17–25; 49:1–10.

13. Indeed, counsel must make a reasonable investigation of the facts and law prior to filing not only the initial pleadings, but all motions and other papers signed by counsel. Fed.R. Civ.P. 11. If this rule is violated, "the court, upon motion or upon its own initiative, *shall* impose upon the person who signed [such documents], a represented party, or both, an appropriate sanction ..." (Emphasis added.)

### B. *Rule 23(b)*

 The court must determine whether the proposed class meets the requirements of Rule 23(b)(3).

Plaintiff contends that common questions of law or fact predominate over questions affecting only individual members of the class. The complaint alleges a common course of conduct of identical misrepresentations and omissions to the class. *See, e.g., Blackie v. Barrack,* 524 F.2d at 905–908. Defendants lodge several objections based primarily on speculation about case management problems.

First, defendants contend that individual questions of reliance under the Section 10(b) and Rule 10b–5 claims predominate. They contend reliance cannot be presumed since this is a case of misrepresentations, not omissions. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472–1473, 31 L.Ed.2d 741 (1972) (individual proof of reliance presumed where action based upon material omissions). As has been observed, "like Newton's Law, every misstatement of fact inherently can be restated negatively in the form of an omission to state the true facts. Thus careful pleading to including material omissions rather than, or in addition to alleged misstatements, will obviate the need to prove individual reliances in [securities] cases." 5 Newberg at 883; *Blackie v. Barrack,* 524 F.2d at 908 ("[W]e think proof of reliance means at most a requirement that plaintiff prove directly that he would have acted differently had he known the true facts."). Such a narrow interpretation of *Affiliated Ute* elevates form over substance and places a premium on gold-leafed pleadings. It is therefore contrary to the liberality inherent in federal notice pleading. Additionally, the complaint herein sets forth numerous alleged omissions as well as misrepresentations in the Registration Statement and Prospectus. Viewing it in the light most favorable to plaintiffs, I conclude reliance issues do not predominate. *See Spector v. City of New York,* 71 F.R.D. 550, 552 (S.D.N.Y.1977). The complaint may be construed as alleging a mixture of omissions and misstatements, but based primarily on nondisclosure of material facts, which also allows class consideration of reliance issues at this time. *See also Cameron v. E.M. Adams and Co.,* 547 F.2d 473, 477 n. 3 (9th Cir.1976).

 Next, defendants contend that individual issues of reliance predominate as to whether putative class members purchased pursuant to the initial Offering or in the aftermarket.

In *Arthur Young & Co. v. United States Dist. Ct.,* 549 F.2d 686 (9th Cir.1977), the court stated:

> "Just as the open market purchaser relies on the integrity of the market and the price of the security traded on the open market to reflect the true value of securities in which he invests, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue." *Id.* at 695.

As the Court spoke of extending the presumption of reliance in the context of the broader principles of *Blackie v. Barrack,* 524 F.2d at 905–908, I am unpersuaded that *Arthur Young* should be limited to discreet cases involving bonds or "unmarketable" securities, as defendants urge. Moreover, the Court was also confronted with the potential problem suggested by the instant defendants that the reliance of each class member may pose problems of class proof. The court responded:

> "We find these instances of questionable evidentiary significance for purposes of making a Rule 23 determination. We do not think [defendants] have yet demonstrated that the proof of non-reliance which they expect to submit at the later trial is of such volume as to be significant to the district court's determination on the Rule 23 issues, or this court's resolution of the [mandamus] petition." 549 F.2d at 695.

Defendants herein have offered only the conjecture of disparate reliance by the putative class members. Without a clear demonstration of unmanageability, their objection to class certification is premature.

■■■ Defendants next contend that individual determinations of state law applicable to each class member's claim will overwhelm any common questions. This contention is also not yet ripe for concern. In *Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), the court held it inappropriate to consider the possible effect of a conflicts of law problem when initially considering class certification. To resolve a conflicts problem, it is defendants' burden to prove that 1) a true conflict exists, 2) each state has an interest in applying its own law, and 3) if each state has such an interest, which states' interest would be more impaired should its law not be applied. *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982); *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Defendants have only asserted the possibility of a conflicts problem at this point. Hence, their objection is premature and will not prevent class certification.[14]

■■■ Defendants also contend that claims under Cal.Corp.C. §§ 25400 and 25500 are unsuitable to class treatment as each class member must satisfy the statutes' jurisdictional requirements. This contention is partially correct.

Cal.Corp.C. § 25008(b) provides in pertinent part:

"An offer to sell or buy is made in this state when the offer either originates from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to buy or to sell is accepted in this state when acceptance is communicated to the offeror in this state ..."

*See also* Marsh & Volk, *Practice Under the California Securities Laws*, § 3.08[1] (1983).

With respect to the initial offering, it appears the Prospectus and other offering materials were issued from ALTOS in California. Acceptances of the securities were apparently directed at ALTOS in California. Hence, purchasers of the initial offering, as well as persons who later purchased in California, satisfy the prerequisites of § 25008(b). Aftermarket purchasers not purchasing in California are not part of the class as to the California Corporations Code claims. *See also In re Victor Technologies Securities Litigation*, 102 F.R.D. 53, 60 (N.D.Cal.1984).

■■■ Defendants finally contend that the class should be closed on January 3, 1984, the date of issuance of a press release containing financial information about ALTOS that should have placed plaintiff on notice as to the problems forming the basis of this suit. *See McFarland v. Memorex Corp.*, 96 F.R.D. at 364. Plaintiffs contend that another "curative" memo was issued on January 20, 1984, containing different information, and that it triggered cause for this action.

A determination of the duration of the class period which hinges upon either of these documents requires a review of the

---

14. Defendants also contend that even if California law were to control proof of the state law claims, each class member would have to satisfy the elements, particularly reliance, such that individual issues would predominate. This contention is equally without merit. The elements of fraud and negligence will in most part be covered by the consideration of the federal claims. To the extent they are not, the class may be decertified or the claims severed to accomodate a just and efficient resolution.

*Hudson v. Capital Mgmt. Intern.*, 565 F.Supp. 615 (N.D.Cal.1983) is not to the contrary. In *Hudson*, the securities were offered and sold pursuant to numerous limited partnership offerings, each containing different representations and some made wholly intrastate and therefore subject only to the laws of a particular forum. In the instant case, only a single Registration Statement and Prospectus form the basis of plaintiff's claims. All documents were disseminated from a central source and to a national audience. There appears no unmanageable disparity in proof as was the case in *Hudson*, at least at this time.

merits of the action insofar as the court must examine the substance of each document and whether a reasonable investor would have been placed on notice as to the financial condition of ALTOS. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571–572 (2d Cir.) *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Merit inquiries are inappropriate at this juncture. *Eisen v. Carlisle-Jacquelin*, 417 U.S. at 178, 94 S.Ct. at 2152. The class shall therefore be conditionally certified as excluding persons purchasing after January 20, 1983.

 Lastly, I find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). A class action appears to be the most cost effective yet manageable means of prosecuting these claims. Management and other problems may be dealt with later pursuant to Rule 23(c)(1).

## III. *Defendant Class Certification*

### A. *Section 11 claims*

Plaintiff seeks certification of a defendant class pursuant to Rule 23(b)(3) with respect to claims under section 11 of the 1933 Securities Act, 15 U.S.C. § 77k (1933), and defined as:

> "All underwriters who, pursuant to a single Underwriting Agreement, participated in the initial registered public offering and sale of Altos common stock on or about November 4, 1982."

The court must be satisfied that the numerosity, commonality, typicality and adequacy requirements of Rule 23(a) are met.

 Including the representative designees, the prospective class includes 89 underwriters located throughout the United States. The court finds, in light of ample precedent, that the numerosity requirement has been met. *See, e.g., In re Gap Stores Securities Litigation*, 79 F.R.D. 283 (N.D. Cal.1978) (91 underwriters); *McFarland v. Memorex*, 96 F.R.D. at 365 (104 underwriters).

The commonality requirement has also been satisfied. The underwriters' liability is contingent upon proof of material misrepresentations or omissions in the offering materials allegedly used by all prospective defendant class members. All such members have the same defenses.

 So too is the typicality requirement met. Under section 11, three defenses are available to underwriters: 1) no misrepresentations were made; 2) defendant exercised due diligence in making the offering, and 3) defendant had no knowledge of any illegality. *McFarland*, 96 F.R.D. at 366; *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 581–583 (E.D.N.Y.1971). Hence, the defenses of any of the underwriters are typical of others.

Finally, the court finds the underwriters are represented by competent counsel and, at this point, there appear no disabling conflicts between the class representative and the class. The court recognizes that, as defendants have pointed out, section 11 provides for joint and several liability amongst participant underwriters. Thus, the lead underwriter's interests could be antagonistic to the class in that they would seek the broadest possible contribution from the class. However, as defendants appear to concede, the conflict, if any, is prospective. As has been stated above, the class may be modified to accommodate any conflicts.

Having found Rule 23(a) complied with, the court also finds that certification of the defendant class for purposes of adjudicating section 11 claims meets the requirements of Rule 23(b)(3). Common questions of law and fact—whether material misstatements and omissions render the offering materials illegal and the availability of section 11 defenses—predominate over individual questions. *McFarland*, 96 F.R.D. at 366. I also find that for the same reasons as stated above in certifying the plaintiff class, certifying a defendant class is the superior means of adjudicating this dispute.

## B. *Section 12(2) claims*

■ Plaintiff seeks certification of a defendant class with respect to the single issue of whether the Registration Statement and Prospectus were materially misleading pursuant to section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*.[15] The only question is whether the class should be certified pursuant to Rule 23(b)(1)(A or B) or 23(b)(3). The practical distinction between the two is that a member of a class certified under Rule 23(b)(1) may not opt out of an action, and the notice provisions under (b)(1) are less detailed[16], making it less costly to plaintiff to administer.

In *McFarland*, 96 F.R.D. at 366, this court certified a defendant class of underwriters for prosecution of a section 12(2) claim under rule 23(b)(1)(A). For the reasons set forth therein, and particularly for reasons of judicial economy, I believe certification is appropriate under that rule here as well. Even though the question of whether the Registration Statement and Prospectus were materially misleading is the only question and obviously predominates over individual questions, such that Rule 23(b)(3) certification would also be appropriate, there is no less economical a prospect than to have this issue litigated 89 times. Further, as a more practical matter,

if any of the underwriters could opt out of the proposed class, this court would end up adjudicating the section 12(2) claims against each of them anyway.[17]

## IV. *Conclusion*

The classes are certified in accordance with "I" above. Plaintiffs are directed to prepare and file with the court within 30 days of this order appropriate proposed forms of notice of pendency of class action.

---

**15.** In accordance with the foregoing discussion regarding section 11, I conclude the requirements of Rule 23(a) have been met concerning the section 12(2) claims.

**16.** Rule 23(c)(2)(A) provides that notice in a (b)(3) action "[s]hall advise each member that (A) the court will exclude him from the class if he so requests by a specified date." The only specified notice required to be given in a (b)(1) action is in the judgment: "The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class." Rule 23(c)(3).

**17.** At least one other court has found Rule 23(b)(1) inapplicable for certifying a defendant class for the single issue of liability under section 12(2) as it applies herein. *See In re Victor Technologies Securities Litigation*, 102 F.R.D. 53 (N.D.Cal.1984), following *McDonnell Douglas*

*Corp. v. United States District Court*, 523 F.2d 1083 (9th Cir.1975) *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). *Victor* appears to rely on *McDonnell's* concern that Rule 23(b)(3)'s "detailed provisions" not be "rendered superfluous." *McDonnell* at 1086.

Considering the "detailed provisions" of Rule 23(b)(3) as a whole, I find this rationale avoids the more logical and practical problems already created by the very certification of defendant classes. It is doubtful the Rule drafters foresaw the lack of practical utility of allowing a defendant to "opt out" of a class. It is dubious a defendant, assuming the putative defendant class representative had adequate counsel, would want to withdraw from a class only to be sued separately and have to retain its own counsel. Therefore, where a defendant class is concerned, judicial economy renders the distinction between 23(b)(1) and (b)(3) academic. The court has discretion to ensure that, in the absence of "detailed provisions," ample notice will obtain.