## In re COMPUTER MEMORIES SECURITIES LITIGATION.

### No. C–85–2335(A) EFL.

United States District Court, N.D. California.

Aug. 26, 1986.

Robert N. Kaplan, Kaplan, Kilsheimer & Foley, Edward Grossmann, Bernstein, Litowitz, Berger & Grossmann, New York City, Sherrie R. Savett, Berger & Montague, Philadelphia, Pa., David B. Gold, David B. Gold, A.P.C., San Francisco, Cal., for plaintiffs.

Steven M. Schatz, Bruce G. Vanyo, Denise M. Amantea, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for defendants Irwin Rubin, Raymond Brooke, Abraham Brand, Frederic A. Heim, Marshall Butler, Ted H. McCourtney, Jr., Frederic T. Boyer and Computer Memories, Inc.

Andrew J. Wistrich, Brown & Bain, Palo Alto, Cal., Howard R. Cabot, H. Michael Clyde, Brown & Bain, P.A., Phoenix, Ariz., for defendants Laurence Hootnick and Intel Corp.

Arnold I. Roth, J. Kelly Nevling, Jr., Rosenman Colin Freund Lewis & Cohen, New York City, Richard B. Glickman, Horwich & Warner, San Francisco, Cal., for defendants Prudential-Bache Securities, Inc., Ladenburg Thalmann & Co., Inc. and Cable Howse & Ragen.

Philip R. Rotner, Richard North Patterson, Susan E. Ashcraft, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Peat Marwick Mitchell & Co.

## ORDER GRANTING MOTIONS FOR CLASS CERTIFICATION

LYNCH, District Judge.

### I. Introduction

This case involves a consolidation of lawsuits arising out of the August 23, 1983 public offering of approximately 2,000,000 shares of common stock in Computer Memories, Inc. ("CMI"). The named plaintiffs in this action are Howard Fine, David M. Director, Mary Ann Director and Steven Abbey. Named as defendants are (1) CMI and certain of its present and former directors and officers; (2) a customer and principal shareholder of CMI, Intel Corporation, and one of Intel's vice-presidents, Lawrence Hootnick, who is also a member of CMI's board of directors; (3) Prudential-Bache Securities, Inc., Cable Howse & Ragen, and Ladenberg, Thalmann & Co., Inc., individually and as representatives of a class of all the underwriters that participated in the August 23, 1983 offering ("the underwriter defendants"); and (4) Peat, Marwick and Mitchell & Co., CMI's accounting firm.

The consolidated complaint alleges claims under sections 11, 15 U.S.C. § 77k, and 12(2), 15 U.S.C. § 77l, of the Securities Act of 1933, section 10(b), 15 U.S.C. § 78j(b), of the Securities Act of 1934 and Rule 10b–5, common law fraud and deceit, and negligent misrepresentation.

Currently before the Court are plaintiffs' motions for certification of a plaintiff class and two defendant classes. For the reasons described below, the Court grants plaintiffs' motions for class certification.

## II. Plaintiff Class Certification

Plaintiffs seek certification of a plaintiff class consisting of:

All persons who purchased the common stock of defendant Computer Memories, Inc., between May 4, 1983 to and including January 31, 1984 (the "Plaintiff Class"). Excluded from the Plaintiff Class are the defendants herein, members of the immediate family of each of the individual defendants, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any excluded party.[1]

With respect to the section 11 and section 12(2) claims, plaintiff Howard Fine is the only proposed class representative. All of the named plaintiffs are proposed class representatives for the remaining claims.

Rule 23 of the Federal Rules of Civil Procedure sets out the requirements for class certification. For any class action, the following four prerequisites contained in subsection 23(a) must be met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The putative class must also qualify under one of the three subdivisions of Rule 23(b).

Plaintiffs contend that the putative class qualifies under 23(b)(3) because common questions of law or fact predominate over individual questions and a class action is superior to other methods for fair and efficient adjudication of the controversy. Fed. R.Civ.P. 23(b)(3).

■ Before discussing each of the prerequisites set forth above, one initial observation is appropriate. The Ninth Circuit and this District in particular have taken a liberal view of class certification motions brought in securities cases. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 903 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In Re Activision Securities Litigation,* 621 F.Supp. 415, 428 (N.D.Cal.1985). This view is justified by the recognition that securities litigation is particularly well-suited for class action treatment. *Blackie,* 524 F.2d at 902–04.

Defendants have challenged only some aspects of plaintiffs' motion. Nevertheless, this Court will address each of the requirements for class certification in order to articulate the required findings. *See In Re Victor Technologies Securities Litigation,* 102 F.R.D. 53, 56 (N.D.Cal.1984).

### A. Requirements of Rule 23(a)

#### 1. Numerosity

■ Approximately nine million shares of CMI common stock were outstanding at the beginning of the class period, and some two million shares were sold to the investing public under the August 23, 1983 offering. Consequently, the number of class members will easily reach into the thousands. The numerosity requirement is clearly met in this case and the defendants have not argued otherwise. Plaintiffs have not established the exact number of class members, but have demonstrated that the class will obviously be sufficiently numerous. This is all that is required. *See Victor Technologies,* 102 F.R.D. at 56.

---

**1.** The defendants have not objected to the plaintiffs' definition of the plaintiff class.

## 2. Commonality

■ The commonality requirement of Rule 23(a) requires that the claims of class members share common questions of law or fact. The gravamen of plaintiffs' allegations concerns insider trading and misrepresentations or omissions in the Registration Statement and Prospectus for the offering. Because the offering materials were uniform and the other allegations of wrongdoing involved a common course of conduct, the class members' claims will clearly involve common questions of law and fact. The Ninth Circuit has taken a "common sense approach" to the commonality requirement by recognizing that "slight differences in class members' positions" will not defeat class certification. *Blackie*, 524 F.2d at 902. To the extent that some of the arguments raised by the defendants can be construed as relating to the commonality requirement, those arguments are addressed and rejected for the reasons given below.

## 3. Typicality

The typicality requirement of Rule 23(a) requires that the claims or defenses of the class representatives not differ significantly from the claims or defenses of the class as a whole. Defendants make three arguments that can be construed as challenges to plaintiffs' assertion of typicality: (1) that different state laws will have to be applied to the common law claims of various class members and therefore that the named representatives' claims may differ from the claims of some of the class members, (2) that certain of the class representatives may not have directly relied on the registration statement and prospectus and therefore their section 10(b) claims will be subject to a unique defense, and (3) that

the Ninth Circuit case of *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973), precludes certification of a plaintiff class for purposes of the section 12(2) claim. The court rejects the defendants' first contention for the reasons discussed below in the section addressing the requirements of Rule 23(b)(3).

■ With regard to defendants' second contention, the Ninth Circuit and the courts of this district have routinely held that in cases such as this the fact that a class representative may not have directly relied on the offering materials will not disqualify him or her as a class representative for purposes of section 10(b).[2] *See, e.g., Blackie*, 524 F.2d at 906; *In re Diasonics Securities Litigation*, 599 F.Supp. 447, 452 (N.D.Cal.1984). This is because the plaintiffs need not show actual reliance on the offering materials in order to prove liability under section 10(b). *Id.* It is sufficient to prove a material misrepresentation or omission plus proof of purchase.[3] *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 695 (9th Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977).

Defendants also argue that *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973) precludes this Court from certifying the class for purposes of litigating any part of the class's section 12(2) claim against the underwriters. In *La Mar*, the Ninth Circuit held that a class representative lacks the requisite typicality to litigate a claim against a defendant that the representative cannot sue individually. *Id.* at 465–66.

■ Accepting the Ninth Circuit's holding in *La Mar* as absolute, defendants argument would be correct. Because a plain-

---

**2.** The Court does not mean to imply that it has accepted defendants' assertion that certain of the class representatives did not rely on the offering materials. This appears to be an open question, but not one that will become predominate in the litigation. *See Activision*, 621 F.Supp. at 431.

**3.** This proof may possibly be rebutted by a showing that a particular investor "would have

acted no differently had [he or she] known the truth." *See Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1283 (9th Cir.1982). The defendants have not attempted to make such a showing, and the mere prospect that such a showing may be attempted at trial will not disqualify a plaintiff from serving as a class representative. *See In re Diasonics Securities Litigation*, 599 F.Supp. 447, 452 (N.D.Cal.1984).

tiff suing under section 12(2) may only recover from defendants that played a substantial role in selling the plaintiff his or her securities, *Admiralty Fund v. Jones,* 677 F.2d 1289, 1294 (9th Cir.1982), plaintiff Howard Fine, the only class representative for the section 12(2) claim, does not have standing to sue individually each of the underwriters named in the complaint. However, the *La Mar* opinion recognizes an exception to its holding "in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 466.

Although the Court acknowledges that the case law is not clear as to whether the "juridical link" exception applies in cases such as this, the Court holds that the exception should apply. Judge Patel has recently held that the fact that a group of defendant underwriters entered into an agreement among themselves concerning the relevant underwriting is "sufficient to provide the 'juridical link' to take [the] case out of the *La Mar* situation." *Activision,* 621 F.Supp. at 432. As in *Activision,* the defendants in this case entered into such an agreement and were thereby bound to a common course of conduct for purposes of the CMI offering. *See id.* The Court is persuaded by Judge Patel and holds that the juridical link exception applies.

Because of the concerns of typicality and adequacy of representation expressed in *La Mar,* class treatment of the section 12(2) claims will, however, be limited as proposed in the plaintiffs' reply brief. The section 12(2) claim will be given class treatment only for the purpose of determining the issue of whether the Registration Statement and Prospectus contained material misrepresentations or omissions.[4] Given the limited scope of the section 12(2) plaintiff class, the Court is convinced that it

does not run afoul of the typicality and adequacy of representation requirements of Rule 23(a). The Court also certifies a subclass for purposes of litigating all aspects of the section 12(2) claims of those class members who purchased their CMI shares under the subject offering from defendant Ladenberg, Thalman & Co., Inc. The concerns expressed in *La Mar* are inapplicable to the subclass because Fine purchased his shares from Ladenberg and therefore has standing to sue Ladenberg directly.[5]

### 4. Adequacy of Representation

■■■ Many of the defendants' objections to certification of the putative class focus on the adequacy of representation the proposed class representatives will provide. Generally, the determination of the adequacy of representation centers on (1) whether the class representatives have competent counsel, and (2) whether the class representatives have interests that are antagonistic to those of any of the class members. *See, e.g., Victor Technologies,* 102 F.R.D., at 56–57. Defendants do not dispute the competency of plaintiffs' counsel, and this Court finds that plaintiffs' counsel have ample experience and expertise in bringing securities fraud class action suits.

The defendants do raise a number of objections relating to the four putative class representatives. For the reasons described below, the Court rejects defendants' contention that the named plaintiffs will not adequately represent the class.

#### i. Howard Fine

Defendants' most vigorous attack on the adequacy of the putative class representatives relates to plaintiff Howard Fine.

---

**4.** The Federal Rules of Civil Procedure authorize certification of a class to litigate particular issues, as opposed to entire claims. Fed.R. Civ.P. 23(c)(4); *see also Activision,* 621 F.Supp. at 438.

**5.** It appears that all the requirements for certification of the subclass under Rule 23(b)(3), in-

cluding numerosity, have been met. However, because the defendants did not thoroughly brief this question, the Court notes that it will not hesitate to decertify the subclass should it be confronted with facts indicating that decertification is appropriate.

This attack is, however, not directly related to either of the two factors normally considered in determining the suitability of a class representative. Instead, defendants assert that "substantial questions about plaintiff Fine's integrity make him an inadequate class representative." Plaintiffs' Memorandum of Points and Authorities, at 1.

Defendants' assertion regarding Fine's lack of integrity is based substantially on a federal grand jury indictment for mail fraud and racketeering issued against Fine in December 1977 and on a number of civil law suits brought against Fine. The federal indictment was subsequently dismissed, and defendants have not offered any direct evidence indicating that Fine was actually guilty of any wrongdoing. Similarly, all of the civil suits described by defendants were either settled or dismissed with prejudice, and defendants have not submitted any evidence supporting the allegations made in those actions.

When the federal indictment against Fine was dismissed, Fine agreed to cooperate in any criminal investigations by the federal government. Fine, however, was never asked to testify in the trial of his law partner who had been indicted along with him. Fine did cooperate in an investigation of Joseph I. Paper, a Workman's Compensation Commissioner in Baltimore, Maryland. That investigation resulted in an indictment against Paper on bribery charges. Count eight of the indictment against Paper charged him with receiving payments from Fine. Paper's trial ended in a mistrial, and a second trial was apparently not brought. Fine has, however, admitted that he gave Paper Christmas gifts each year from 1971 through 1975 in the hope of making Paper less offensive and abusive in hearings. These gifts for the relevant years were a shoe shine kit and liquor, $50, $50, $100, and $200 respectively. Fine was never prosecuted for his actions and although the Maryland State Bar instituted disciplinary proceedings Fine was apparently not formally censured.

■ Character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received in this district. *See Weinberger v. Jackson*, 102 F.R.D. 839, 845 (N.D.Cal.1984); *Activision*, 621 F.Supp., at 429. Although, the focus of the adequacy determination has been on the competency of counsel and the absence of antagonistic interests between class representatives and class members, not on the personal integrity of class representatives. *See, e.g., Weinberger*, 102 F.R.D. at 845, it is self-evident that a Court must be concerned with the integrity of individuals it designates as representatives for a large class of plaintiffs. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949) ("diligence, wisdom and integrity" of class representatives considered important). Nevertheless, questions of personal integrity are but one factor the Court must consider in making the adequacy determination. *Weinberger*, 102 F.R.D., at 845. As indicated, competency of counsel and absence of antagonistic interests are also relevant factors and are usually considered determinative. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

The Court also believes that the source of objections to the adequacy of class representation must be considered. Other courts have noted the irony in strenuous objections made by defendants to the adequacy of plaintiff class representatives. *See, e.g., Diasonics*, 599 F.Supp. at 451–52. In this case, Fine is the sole representative for the plaintiff classes relating to the section 11 and section 12(2) claims. Thus, if successful, defendants' attack on Fine's integrity would preclude class action treatment of those claims. "[A] court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation...." *Kline v. Wolf*, 702 F.2d 400 (2d Cir.1983).

At oral argument, the Court questioned all counsel present regarding any potential

for personal benefit Fine may have by bringing this lawsuit as a class action. No attorney was able to identify a single benefit to Fine that would not be shared by other class members. Similarly, when the Court challenged the defendants' counsel to give a hypothetical example of a situation in this litigation when Fine's personal interests might diverge from those of the class members, counsel's only response was that Fine may resist valid discovery and may be willing to accept an inadequate settlement offer to avoid court costs, which defendants assert may be substantial due to high photocopying expenses. These are hardly serious potential conflicts: discovery disputes can be resolved by the court and usually result from disputes between counsel, not clients, and the possibility that Fine will "sell out" the class to avoid his share of taxable court costs seems, at this point, remote. In all candor, after the hearing on this matter, the Court was left with the distinct impression that none of the parties actually believed that Fine would not adequately represent the class.

■■■ Having given careful consideration to defendants' arguments both in their papers and at oral argument, the Court concludes that plaintiff Fine will adequately represent the class. Fine's involvement in a number of civil suits and his indictment on criminal charges are obviously of great concern to the Court. However, the only improper conduct actually documented by the defendants relates to four Christmas gifts made approximately ten years ago. In addition, Fine's counsel has, to date, been more than adequate. And most importantly, defendants have failed to show that Fine's interests are antagonistic to those of the class members.

This Court's ruling should not be construed as a blanket statement that concerns of personal integrity should never preclude class certification unless potential or real conflicts of interest between the class and the proposed representative are

shown. Rather, having considered the quality and integrity of Fine's counsel, the probative evidence relating to Fine's integrity, the effect of disqualifying Fine, the source of the objections to Fine's integrity, the potential for a conflict of interest between Fine and the class, and the possible motives for Fine's desire to serve as a class representative, the Court has concluded that Fine can adequately represent the class. If as the litigation progresses it becomes apparent that Fine's representation of the class is inadequate, the Court will disqualify Fine as a class representative, thereby precluding plaintiff class treatment of the section 11 and section 12(2) claims.

ii. Steven Abbey

■■■ Defendants argue that Abbey is not an adequate class representative because he did not directly rely on the offering materials and because certain of his statements regarding issues in this case are so inconsistent that they indicate a lack of personal integrity and a lack of understanding of this litigation. The lack-of-reliance argument has been considered above and rejected.[6] Having reviewed the materials submitted by the defendants, the Court does not believe that Abbey's statements, to the extent they even are inconsistent, impugn his ability to serve as a class representative.

iii. David and Betty Ann Director

Defendants challenge the Directors' adequacy as class representatives by asserting that they have given inconsistent responses to questions regarding what they relied on in purchasing CMI stock. As noted above, the Court has already rejected the lack-of-reliance argument. In addition, after having reviewed all of the discovery material submitted by both sides, the Court does not find that the statements by the Directors, to the extent they even are inconsistent, raise serious concerns regarding the Directors' ability, either on grounds of compe-

---

**6.** As part of this argument, the defendants suggest that Abbey's theory of liability differs sig-

nificantly from that of the other class members. The Court finds no basis for the suggestion.

tency or integrity, to serve as class representatives.

Defendants also argue that the Directors have a conflict of interest because they sell microcomputers offered by Compupro and AT & T. These computers contain disk drives built by competitors to CMI. In addition, it appears that the Directors occasionally sell disk drives separately. Defendants assert that the Directors' personal interests diverge from those of the class members such that the Directors may be motivated to prolong this litigation, notwithstanding a generous settlement offer, in an effort to discredit CMI and its products.

■■■ The Court finds defendants' assertion meritless. The deposition testimony by the Directors indicates that the type of disk drives contained inside computer systems is seldom a significant selling point and that in selling disk drives separately the Directors have not attempted to promote a single disk drive manufacturer but have merely responded to customer requests. The Court finds this testimony credible. Consequently, the prospect that the Directors would pass up a favorable settlement offer in an attempt to discredit the quality of CMI's disk drives seems very remote.

### B. Requirements of Rule 23(b)(3)

■■■ Rule 23(b)(3) requires that the court find that common issues of law or fact predominate over individual issues, and that a class action represents a superior form of adjudicating the dispute. Because the complaint alleges a "common course of conduct" of misrepresentations, omissions and other wrongdoing that allegedly affected all the class members in the same manner, common questions predominate. *Blackie,* 524 F.2d at 905–08. "The mere presence of potential individual issues does not defeat the predominance of common questions." *McFarland v. Memorex,* 96 F.R.D. 357, 363–64 (N.D.Cal.1982). Furthermore, the Court concludes that the class action format represents the most

efficient means of litigating and adjudicating this dispute.

Defendants make only one argument, in addition to those addressed above under other headings, that the requirements of Rule 23(b)(3) have not been met. This argument relates solely to the class's two common law claims for fraud and deceit and for negligent misrepresentation. Defendants assert that this Court will not be able to apply California law to all the class members' state law claims and, as a consequence, common issues of law or fact will not predominate over individual issues. In support of this contention, defendants note that the class members are located in no fewer than 38 different states as well as a number of foreign countries and that the relevant laws of the other implicated jurisdictions materially differ from those of California.

■■■ A great deal of the debate among the parties concerning the defendants' contentions centers on the relative "burdens" of persuasion involved. Thus, prior to discussing the merits of defendants' argument, a clarification of these burdens is appropriate. First, the party seeking class certification should bear the burden of showing that common questions of law or fact predominate. *See Carr v. New York Stock Exchange, Inc.,* 414 F.Supp. 1292, 1304 (N.D.Cal.1976); *Bel Air Markets v. Foremost Dairies, Inc.,* 55 F.R.D. 538, 540 n. 1 (N.D.Cal.1972). Second, under California choice of law rules, the party seeking to invoke the law of another jurisdiction bears the burden of going forward with the argument that the foreign jurisdiction's law conflicts with the relevant California law, that both California and the foreign jurisdiction have an interest in having their own laws applied, and that the interests of the foreign jurisdiction will be more impaired than those California if its law is not applied. *Nelson v. Tiffany Industries Inc.,* 778 F.2d 533, 534 (9th Cir. 1985) ("California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its law applied.");

*Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *Hurtado v. Superior Court*, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106, 522 P.2d 666 (1974) ("[G]enerally speaking, the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state."). Once a "true conflict" has been shown, i.e., that the law of California and that of another state materially differ and both states have interests in having their own law applied, there is no presumption that California law will apply. *See Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 n. 7 (9th Cir.1982). Rather, the court must apply the law of the "jurisdiction whose interests would be more impaired if its law were not applied." *Id.* at 1196.

The above-described burdens can create undue hardships in the context of a class certification proceeding. Because putative class representatives bear the burden of showing that common questions of law or fact predominate, the Court could require the representatives to (1) identify all jurisdictions that have an interest in any of the claims asserted on behalf of class members and that have laws applicable to those claims that conflict with the relevant laws of California, (2) show which jurisdiction's law will apply, based on California choice of law principles, to the claims of each class member, and (3) show that, given the applicable law, common questions of law or fact predominate. Imposing such a burden on the putative class representatives seems overly onerous in light of the fact that, at the time of the class certification motion, it may be unclear whether any party to the litigation will ever attempt to invoke the law of another jurisdiction. The court would in effect be requiring the putative class representatives as a condition to class certification to defeat a myriad of motions for the application of foreign law that may never be filed.

This District has formulated a method of dealing with the tension created between the burden placed on a putative class representative seeking class certification and the burden placed on individuals attempting to invoke the law of a foreign jurisdiction. Courts in this District have provisionally certified class actions recognizing that decertification may be necessary if the parties raise choice-of-law issues that render the litigation unmanageable. *See, e.g., Activision*, 621 F.Supp. at 431–32; *Weinberger*, 102 F.R.D. at 847; *Victor Technologies*, 102 F.R.D. at 59–60; *But see McFarland*, 96 F.R.D. at 364. Provisional certification has been allowed only after the District courts have found that, absent a successful attempt to invoke the laws of another jurisdiction, California law could properly be applied to the dispute. In essence, the courts of this district have presumed for class certification purposes that California law will apply when (1) no party to the litigation has successfully argued prior to the certification motion that, under California choice-of-law rules, the law of another jurisdiction will probably apply, and (2) California law could be constitutionally applied. *See Activision*, 621 F.Supp. 415, *motion to reconsider class certification denied*, No. C–83–4639(A) MHP (N.D. Cal., Dec. 2, 1985); *Diasonic*, 599 F.Supp. 447, *motion for decertification denied*, C–83–4584 RFP (N.D.Cal. Feb. 26, 1986); *In re Pizza Time Theatre Securities Litigation*, [1985–1986 Transfer Binder] (CCH) Fed.Sec.L.Rep. § 92,537 at 93,217 (N.D.Cal. 1986); *But see In re Eagle Computer Securities Litigation*, No. C–84–20382(A) WAI (N.D.Cal. March 26, 1986). The Court adopts this approach for purposes of this motion.

Although the defendants have submitted briefs indicating that numerous jurisdictions have laws that differ from the relevant California laws, the defendants have not requested that the Court apply the law of another jurisdiction or argued that the interests of any particular jurisdiction would be more impaired than those of California if the jurisdiction's law were not applied. Furthermore, for the reasons given by other courts in this District in the opinions cited immediately above, there is a strong possibility that in a case such as this

the final resolution of any conflict-of-law issues that may arise will be consistent with the requirements of Rule 23(b)(3), either because California law will apply across the board or the use of subclasses will alleviate any problems created by the application of the laws of more than one jurisdiction.[7] Thus, the Court turns to the second question of whether California law may be constitutionally applied to each of the claims of each of the class members.

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 2980, 86 L.Ed.2d 628 (1985), the Supreme Court formulated a two step analysis for determining whether a forum state may constitutionally apply its law to all of the individual claims of a class. The first issue that must be resolved is whether the forum state's law "conflicts in any material way with any other law which could apply." *Id.*, 105 S.Ct. at 2977. This question is important because unless such a conflict exists, it would be impossible for the application of forum law to violate the Constitution. *Id.* If a conflict exists, the court must determine whether the forum has "a 'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests' in order to ensure that the choice of [forum] law is not arbitrary or unfair." *Id.* at 2980. (quoting in part *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981)).

The defendants have submitted extensive briefs indicating that the laws of other states where putative class members reside conflict in a material way with the laws of California. Therefore, the Court must address the second prong of the *Shutts* test.

▆▆▆ The Court finds that the second prong of the *Shutts* test has been satisfied. California clearly has sufficient contacts with the claims of each member of the plaintiff class to create state interests that

ensure that the application of California law would not be arbitrary or unfair. The undisputed contacts to California include the following: (1) CMI is a California corporation, (2) CMI's principal place of business is in Chatworth, California, (3) Intel's principal place of business is in California, (4) the public offering of securities involved in the case emanated from California and most of the activities of the defendants in connection with the public offering took place in California, (5) the capital raised by the offering went to company offices in California, and (6) virtually all of the non-individual defendants, regardless of their residence, transact business in California. These contacts give rise to a multitude of interests California has in applying its own law. Those interests are discussed in detail in a number of recently decided decisions in this district in which courts have held that contacts nearly identical to those enumerated above were sufficient to satisfy the *Shutts* test and to warrant provisional class certification. *See Diasonics*, 599 F.Supp. 447, *motion for decertification denied*, C–83–4584 RFP (N.D.Cal. Feb. 26, 1986); *Activision*, 621 F.Supp. 415, *motion to reconsider class certification denied*, No. C–83–4639(A) MHP (N.D.Cal., Dec. 2, 1985); *In re Pizza Time Theatre Securities Litigation*, [1985–1986 Transfer Binder] (CCH) Fed.Sec.L.Rep. § 92,537 at 93,217 (N.D.Cal.1986).

▆▆▆ Defendants criticize the above-cited opinions on the basis that they fail to consider individually the claims of each class member. Evidently, defendants believe that the *Shutts* test can only be satisfied by a court's making specific findings regarding the California contacts to each class member's claims, name-by-name. The Court finds no basis for interpreting *Shutts* in such a way. The *Shutts* opinion merely requires a showing that there are sufficient contacts between the forum state and each individual class member's claims

---

**7.** Obviously, if the defendants, or for that matter the plaintiffs, subsequently raise choice-of-law questions that render this action inappropriate for class treatment, the Court will decertify the class or make other necessary modifications in

the structure of the litigation. *See generally* Note, Choice of Law and the Multistate Class: Forum Interest in Matters Distant, 134 U.Pa.L. Rev. 913 (1986).

to create forum interests in the litigation such that application of forum law will not be arbitrary or unfair. When a court finds that this requirement can be satisfied by simply considering contacts that apply generally to every class member's claims, the court need not articulate how the contacts apply in each class member's case.

### III. Certification of the Defendant Classes

Plaintiff also seeks certification of two defendant classes: one for purposes of litigating the underwriters' liability under section 11 and one for purposes of litigating a single issue with regard to the section 12(2) claim—whether the August 23, 1983 Registration Statement and Prospectus contained materially false and misleading statements or omissions. The putative defendant classes consist of:

> All underwriters who, pursuant to a single Underwriter Agreement, participated in the registered public offering and sale of Computer Memories, Inc. common stock on or about August 23, 1983.

Plaintiffs request that the Court designate all the named underwriter defendants as representatives for both the defendant classes. The named underwriters were the managing underwriters for the public offering.

For the reasons given below, the Court grants plaintiffs' motion to certify the defendant classes as defined above and designates the named underwriter defendants as class representatives.

### A. Rule 23(a)

#### 1. Numerosity

Each of the putative classes includes 87 different underwriters. This number satisfies the numerosity requirement. *See Activision,* 621 F.Supp. at 433 (class of 150 underwriters); *In re Gap Stores Securities Litigation,* 79 F.R.D. 283, 302 (N.D. Cal.1978) (91); *In re Itel Securities Litigation,* 89 F.R.D. 104, 112 (N.D.Cal.1981) (114); *McFarland,* 96 F.R.D. at 365 (104);

*Weinberger,* 102 F.R.D. at 848 (89); *Victor Technologies,* 102 F.R.D. at 61 (93).

#### 2. Commonality

The primary issue under section 11 will be whether the offering materials contained material misrepresentations or omissions, and this is the sole issue to be given defendant class status under section 12(2). The same materials appear to have been disseminated by each underwriter. Moreover, the underwriters share common defenses against the section 11 claim. Therefore, the commonality requirement is satisfied for both classes. *Activision,* 621 F.Supp. at 433, 436; *Itel,* 89 F.R.D. at 112, 118.

#### 3. Typicality

The underwriter defendants will share three common defenses to the section 11 claim: (1) due diligence on the part of the lead underwriters, (2) no misrepresentations or omissions in the offering materials, and (3) the plaintiffs purchased their CMI securities with knowledge of the misrepresentations or omissions. *Itel,* 89 F.R.D. at 112. The second of these three defenses will also be shared by the underwriter defendants in litigating the section 12(2) issue to be given class treatment.

The named underwriters argue that the typicality requirement has not been met with respect to the section 11 class because each underwriter will have an individualized due diligence defense based on whether the particular underwriter, given its role in the offering, satisfied its due diligence obligation. This argument has been rejected by Judge Patel in a recent case that also involved certification of an underwriter class comprised of a syndicate of underwriters led by a smaller group of lead underwriters. Judge Patel reasoned as follows:

> [D]efendants ... argue that the due diligence defense of the lead underwriters is different from the due diligence defense of the class members. This contention, while true, does not defeat class certification inasmuch as the other de-

fenses are identical. Clearly, the lead underwriters have an incentive to prove their own due diligence, and a finding of due diligence on their part could exonerate the class members as well.... Only if the lead underwriters are found to have acted without due diligence would the diligence of the class members become a factor. The court could bifurcate the trial at that point should the need arise.

*Activision,* 621 F.Supp. at 434.

The Court adopts Judge Patel's reasoning and therefore rejects the named underwriters' argument.

The underwriter defendants also argue that the typicality requirement has not been met for purposes of certifying a defendant class to litigate the section 12(2) issue because plaintiff, Fine, the sole class representative for the section 12(2) plaintiff class, does not have a cause of action against each of the members of the proposed underwriter class, as required by *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461 (9th Cir.1973). For the reasons given earlier, the Court rejects this argument because it finds that the "juridical link" exception described in *La Mar* is applicable and because the limited scope of the section 12(2) class assures typicality and adequacy of representation.

With respect to defendants' argument based on *La Mar,* it is also important to note that, for the reasons described herein, the Court has decided to certify a defendant class for purposes of litigating the underwriters' liability under section 11. Thus, the section 12(2) issue would be litigated by an identical defendant class as part of the section 11 claim even if the section 12(2) class were not certified. This fact further "suggests a single resolution of the dispute would be expeditious." *La Mar,* 489 F.2d at 466; *see Itel,* 89 F.R.D. at 121 ("An important relationship uniting the defendant underwriters and justifying class treatment of the § 12(2) actions is that the underwriters ... are already united as a class for purposes of litigating the § 11 actions").

### 4. Adequacy of Representation

The named underwriter defendants do not argue that their counsel would inadequately represent the proposed classes, and this Court finds that counsel for the named underwriters clearly has the expertise and experience to represent aptly the defendant classes.

The underwriter defendants do, however, argue that their interests will conflict with those of the other underwriters such that they cannot adequately represent the section 11 defendant class members. In support of this contention, the underwriter defendants argue that they will have no incentive to pursue unique due diligence defenses available to certain class members. For the reasons described above, the Court does not believe that the prospect that certain of the class members may have unique due diligence defenses creates problems regarding the adequacy of class representation.

### B. Requirements of Rule 23(b)

Plaintiffs argue that the section 11 underwriter class should be certified under Rule 23(b)(3) and that the section 12(2) single-issue defendant class should be certified under Rule 23(b)(1)(A).

The section 12(2) class does not qualify for certification pursuant to Rule 23(b)(1)(A). That subdivision applies when "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." While separate litigation of the section 12(2) issue could lead to inconsistent or varying adjudications with respect to the individual members of the defendant class, plaintiffs have not shown that such a result would establish incompatible standards of conduct for the defendant class members. Thus, Rule 23(b)(1)(A) does not apply. *See Activision,* 621 F.Supp. at 436.

The Court finds that both the defendant classes meet the requirements of Rule 23(b)(3) and should be certified under that subdivision. As discussed earlier, common questions of law and fact predominate. Moreover, the class action format represents the most efficient means of litigating the issues raised against the defendant classes.

Summary

In accordance with the foregoing,

(1) plaintiffs' motion for certification of the plaintiff class under Rule 23(b)(3) is granted as more fully described above, and

(2) plaintiffs' motion for certification of the defendant underwriter classes is granted under Rule 23(b)(3).

IT IS SO ORDERED.