**In re ADOBE SYSTEMS, INC. SECURITIES LITIGATION.**

**This Document Relates To All Actions.**

**No. C 90 2453 SC.**

United States District Court, N.D. California.

April 9, 1991.

David B. Gold, Paul F. Bennett, George S. Trevor, David B. Gold, A Professional Law Corp., San Francisco, Cal., William S. Lerach, Milberg, Weiss, Bershad, Specthrie, & Lerach, San Diego, Cal., Bruce M. Stumpf, Pomerantz, Levy, Haudek, Block & Grossman, New York, N.Y., Norman Berman, Berman, DeValerio & Pease, Boston, Mass., Elizabeth J. Cabraser, Lieff, Cabraser & Heiman, San Francisco, Cal., for ·plaintiffs.

Jeffrey S. Facter, Koji E. Felton, Michelle Bryan, Shearman & Sterling, San Francisco, Cal., for defendants.

## ORDER RE: MOTION FOR CLASS CERTIFICATION

CONTI, District Judge.

### I. INTRODUCTION

Plaintiffs Donald A. Wells, Jr. ("Wells") and Richard Cloutier ("Cloutier") move this court for a class certification pursuant to Fed.R.Civ.P. 23 in this action for federal securities laws violations and pendent state law claims. Plaintiffs seek certification of a plaintiff class, exclusive of defendants, comprising persons who purchased common stock, or options to purchase common stock, of Adobe Systems, Inc. ("Adobe") from March 6, 1990 through May 24, 1990 (the "Class Period").

Plaintiffs allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b–5 thereunder ("Rule 10b–5"), and violations of California fraud and negligent misrepresentation laws. Plaintiffs allege that Adobe artificially inflated the price of its stock by issuing false or misleading public statements during the Class Period.

In addition to Adobe, plaintiffs name as defendants certain Adobe officers and directors ("Individual Defendants"): John E. Warnock ("Warnock"), Chairman of the Board and Chief Executive Officer and a Director of Adobe; Charles M. Geschke ("Geschke"), President and Chief Operating Officer and a Director of Adobe; M. Bruce Nakao ("Nakao"), Vice President of Finance and Administration, Chief Financial Officer, Treasurer and Assistant Secretary of Adobe; and Stephen A. MacDonald ("MacDonald"), Senior Vice President, International Systems Division of Adobe.

### II. BACKGROUND

Adobe was founded in 1982 and manufactures and develops software for the computer industry. Prior to the Class Period, Adobe enjoyed consistent growth due in large part to the wide acceptance of its main product, the PostScript interpreter. The PostScript interpreter is a page description language for electronic printing and publishing and computer displays, and is usually implemented in a "controller"

which controls an associated printer or other output device. Adobe licenses the PostScript interpreter to original equipment manufacturers ("OEMs"), who incorporate Adobe's technology and pay Adobe a royalty based on the volume of printers or other incorporating devices sold to end users. Adobe's three major customer OEMs are Apple Computer, IBM, and NEC; their combined royalties represent 30 to 40% of Adobe's total revenues.

Plaintiffs allege that between March 6, 1990 and May 24, 1990, various defendants knowingly made false or misleading public statements suggesting continued strong growth for Adobe earnings in the second fiscal quarter of 1990 (March, April and May).[1] At the same time, according to plaintiffs, defendants withheld material information indicating much weaker earnings for the same period.

On May 24, 1990, Adobe announced that earnings for the second fiscal quarter of 1990, ending June 1, 1990, would be lower than previously expected. On May 25th, before the stock market opened, Adobe announced estimated revenues in the range of $33 to $36 million and earnings per share in the range of 29 to 37 cents. It stated that three of its significant customers had reduced product shipments. After the market opened later that day, the price of Adobe stock dropped over 15 points, or around 30% of its value, from $50.50 per share to $35.25 per share at the close of the market on May 25th.

Immediately thereafter plaintiffs brought this action, alleging the following: During the Class Period between March 6, 1990 and May 24, 1990, defendants conditioned the market to believe and expect that Adobe would continue to report steady growth in earnings per share throughout fiscal 1990. In order to maintain a false impression of continued growth, defen-

dants disseminated false or misleading statements to the investing public regarding Adobe's future prospects, thereby inflating stock prices or maintaining them at inflated levels. When Adobe disclosed that, based on preliminary estimates, earnings for the second fiscal quarter would be significantly lower than expected, the price of the common stock dropped by more than 30%. During the Class Period, the Individual Defendants, as corporate insiders, collectively sold over 211,000 shares of the Adobe's common stock, obtaining aggregate proceeds exceeding $8,158,745.

According to plaintiffs' pleadings, and deposition testimony by Cloutier and Wells, each plaintiff relied on the alleged misstatements by Adobe, through the individual defendants, to his detriment. Cloutier Tr. at 131, 260; Wells Tr. at 116, 118–119. Cloutier purchased Adobe options during the Class Period, Cloutier Tr. at 123, and Wells purchased both Adobe common stock[2] and options during the Class Period, Wells Tr. at 58 and 74–75.

Based on a thorough review of the individual facts of this case and the complex legal issues involved, as argued by the several pleadings of both sets of parties, plaintiffs' request for class certification is hereby GRANTED.

## III. DISCUSSION

As a preliminary matter, the court notes the following principles which guide its determination of this motion. First, class actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.1964). Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class

---

**1.** The court discussed in detail the specific allegedly false or misleading statements made by the individual defendants. *See In re Adobe Systems, Inc., Securities Litigation,* 767 F.Supp. 1023 (N.D.Cal.1991) (Order re: Motion to Dismiss Second Amended Consolidated Complaint). The court will not restate those facts in detail here.

**2.** Although the common stock purchases were for Wells' Keogh account, neither party has presented any reason that these purchases should be treated differently than purchases for Wells' individual portfolio.

actions in securities litigation. *See, e.g., In re Activision Securities Litig.*, 621 F.Supp. 415, 428 (N.D.Cal.1985).

██ Second, the issues in a class certification motion are of a limited and transient nature. A district court must not consider the merits of the action when determining whether class certification is appropriate. *Eisen v. Carlise–Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975).[3] Additionally, class certification under Fed.R.Civ.P. 23 is a preliminary ruling and is subject to modification. *Weinberger v. Jackson*, 102 F.R.D. 839, 843 (N.D.Cal.1984).

██ A district court, however, should determine that the proposed class representatives are part of the class and suffered the same injury as the putative class members. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). With these preliminary comments in mind, the court turns to Rule 23 and the merits of plaintiffs' motion.

Fed.R.Civ.P. 23(a) directs courts to consider four prerequisites when determining whether a class should be certified. It provides as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four prerequisites are frequently referred to as (1) Numerosity, (2) Commonality, (3) Typicality, and (4) Adequacy. *See Weinberger* at 844. If a court finds that Rule 23(a)'s prerequisites are satisfied it should then consider if the conditions for the requested form of class action under Rule 23(b) are satisfied. Plaintiffs request a class certification under Rule 23(b)(3), which requires the court to find:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

██ In applying the requirements of Rule 23 to the facts of this case, the court notes at the outset that defendants challenge class certification only on grounds of typicality and adequacy of representation.[4] Thus, rather than discussing in detail the requirements of numerosity and commonality, the court will move directly to the issues of contention in this motion.

A. *Typicality*

Defendants contend that both plaintiffs are subject to the arguably unique defense of lack of standing, and that Wells is subject to the arguably unique defense of lack of reliance[5], and that, therefore, the typi-

---

**3.** Accordingly, the court will only rule on issues which need to be resolved to reach a determination regarding class certification.

**4.** In the interest of completeness, however, the court finds that this case clearly satisfies: (1) the numerosity requirement, as defendants do not dispute plaintiffs' assertion that "hundreds if not thousands" of class members traded Adobe stock and options during the Class Period; and (2) the commonality requirement, as the Ninth Circuit, along with the overwhelming weight of authority, has held that securities fraud involving misrepresentation to inflate stock prices satisfies this requirement, particularly where plaintiffs, as here, allege a common and consistent

course of conduct. *See, e.g., Blackie* at 902–04. The court also finds that a class action here will provide the fairest, most efficient vehicle for adjudication of the controversy.

**5.** Inexplicably, defendants do not address, in any of their pleadings, Wells' standing as a purchaser of common stock for his Keogh plan. Likewise, plaintiffs do not argue that this alone gives Wells standing. Although the court does not base its decision to certify the class exclusively on Wells' status as a common stock purchaser for his Keogh, this would seem to be enough to give Wells standing, regardless of the outcome of the "options trader" question discussed below.

**154**

cality requirement is not met.[6] The court will address each of these contentions in turn.

**1. Lack of Standing for Options Traders**

■ The Ninth Circuit has yet to address the issue of whether options traders have standing to assert Rule 10b–5 claims against companies issuing common stock to which the options are related. Moreover, there is a split among courts of other jurisdictions on the question with, *inter alia*, the Third Circuit holding that options traders do have standing[7] and the Eighth Circuit holding that they do not.[8] As both sets of parties note, however, this court recently addressed a similar question concerning the breadth of Rule 10b–5.

In *In re Worlds of Wonder Sec. Litig.*, 1990 WL 260675 (N.D.Cal. Oct. 30, 1990) (Order re: Howenstein's Motion for Summary Judgment) ("*WOW*"), this court held that debenture holders have a cause of action against insider traders of stock under Rule 10b–5. Although the court does not cite its earlier decision as binding precedent on the precise question currently before it, it finds much of the reasoning persuasive.[9]

Rule 10b–5 reads:

It shall be unlawful for any person, directly or indirectly, ... (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates ... as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The Supreme Court has emphasized the broad coverage of Rule 10b–5: "[A] § 10(b) action can be brought by a purchaser or seller of '*any* security' against '*any* person' who has used '*any* manipulative or deceptive device or contrivance' in connection with the purchase or sale of a security." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) (emphasis supplied by Court).

Moreover, in 1982, Congress amended the definition of "securities" applicable to Rule 10b–5 to explicitly include options: "The term 'security' means ... any put, call, straddle, *option, or privilege on any security....*" 15 U.S.C. § 78c(a)(10) (1982) (emphasis added). A number of courts have interpreted this text to mean that option trader plaintiffs, as "securities" traders, have standing to bring a claim under Rule 10b–5. *See, e.g., In re Digital Equip. Corp. Sec. Litig.*, 601 F.Supp. 311, 315 (D.Mass.1984).

Finally, several key policy goals of Section 10(b) apply to this motion. The purposes of Section 10(b) include promoting fair and honest securities markets, and protecting investors against the manipulation of securities prices. *See, e.g.*, 15 U.S.C. § 78j(b); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1441 (9th Cir.1987). The federal securities laws aim to insure that no investor, regardless of individual risk preferences, has to risk fraud. Private actions as well as actions by the SEC are necessary to further the goal of honest markets. Congress has not manifested an intent to limit private party standing to those plaintiffs who purchase stock but,

---

**6.** Defendants cite several cases, although none from the Ninth Circuit, for the proposition that typicality is absent where the putative representative is subject to an "arguable [sic] unique defense." *See, e.g., Zenith Laboratories v. Carter–Wallace, Inc.*, 530 F.2d 508, 512 (3rd Cir. 1976).

**7.** *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 508 (3rd Cir.1988).

**8.** *Laventhall v. General Dynamics Corp.*, 704 F.2d 407, 411–12 (8th Cir.1983).

**9.** Indeed, by stating that "[s]everal courts have looked to [the text if the 1982 amendment broadening the definition of securities covered by 10b–5] and have concluded that option trader plaintiffs, as 'securities' traders, have standing to bring a claim under Rule 10b–5[ ]," the court implicitly adopted the view that options traders are covered by the rule. *WOW* at 7. The court today makes this holding explicit.

quite the contrary, has manifested an intent to broaden the scope of liability under Rule 10b–5.

Defendants admit that some options traders may have standing, but claim this is so only if they have a fiduciary relationship with the corporation which, defendants contend, plaintiffs in the instant case do not have. The court disagrees. Defendants rely primarily on the Supreme Court's decision in *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), for this proposition, but conveniently ignore the explicit distinction the Court draws in that case between misrepresentation and nondisclosure: "At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose the material information ... commits fraud only when he is under duty to do so." *Id.* at 227–28, 100 S.Ct. at 1114–15.

In making this distinction, the Court cited *Restatement (Second) of Torts* (1977) § 551 for the proposition that nondisclosure creates liability only to the narrow class of persons to whom a fiduciary or similar duty is owed. *Id.* at 228, 100 S.Ct. at 1114. Section 531 of the *Restatement,* however, states that:

> One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

Clearly, since the value of options is directly related to the value of common stock, defendants had reason to expect that option traders would rely on their alleged misrepresentations. Plaintiffs have standing under Rule 10b–5 as options traders.

### 2. Lack of Standing for Wells Due to Lack of Reliance

Defendants contend that Wells is atypical because he cannot prove reliance. This contention is easily disposed of under the frequently cited Ninth Circuit decision in *Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975). There, the court held that, in order to establish the fraud-on-the-market presumption of reliance in a 10b–5 claim for inflating stock prices via deception, plaintiff need only show proof of purchase and that the misrepresentation or omission affected the market set price of the security. *Id.* at 906. Although not necessary under *Blackie,* as discussed, Wells indicated in his deposition that he did, in fact, rely on the market price. Wells Tr. at 118.[10]

Contrary to defendants' assertions, the fact that Wells may have known about the misrepresentation subsequent to the Class Period, but prior to his purchase of more Adobe securities, does not at all rebut the presumption of reliance. As the Ninth Circuit has stated: "Even though *Blackie* nominally allows defendants to rebut causation by a showing of no reliance, it seems to us that such a concession is virtually meaningless, and perhaps nonsensical, in an open market situation." *Little v. First California Co.,* 532 F.2d 1302, 1304 n. 3 (9th Cir.1976). As plaintiffs correctly point out, Wells' purchase of options after the close of the Class Period does not speak at all to his belief as to the value of Adobe stock before he became aware of the misrepresentation. By the time he bought the options, the disclosure of adverse information had already been made and the stock price had already fallen more than $15.

In any case, "[p]roof of plaintiff's individual reliance is not required in so-called 'open market' situations. *Id.* (citing *Blackie* at 906). The court will not rule plaintiff Wells atypical on a lack of reliance theory.

In light of the foregoing, the court finds that the typicality requirement of Rule 23 is met.

---

**10.** Any inquiry into the credibility of plaintiffs' deposition testimony on any issue would clearly be improper at this stage of the proceedings. *See, e.g., Eisen,* 417 U.S. at 178, 94 S.Ct. at 2152.

### B. *Inadequacy of Representation by Wells*

 Defendants also oppose plaintiffs' motion for class certification on the grounds that plaintiff Wells is not an adequate class representative because he lacks sufficient knowledge regarding this litigation.[11] The court finds this argument without merit.

From the record, the named Plaintiffs all appear familiar with the basic outline of this action in that they understand the gravamen of the claims. It is not necessary that they be intimately familiar with every factual and legal issue in the case. "A complex securities action cannot be founded upon an investigation of a litigant." *Weinberger* at 845. The reality of complex cases of this type is that clients must defer a great amount of discretion to their lawyers. *Id.*

As this court has previously noted, the test for adequacy of representation is merely whether or not plaintiffs have demonstrated a willingness and vigor to prosecute the action, whether they have any disabling conflicts going to the heart of the controversy, and whether they have qualified counsel. *In re Worlds of Wonder Sec. Litig.* at 9, 1990 WL 61951 (N.D.Cal. March 26, 1990) (Order Re: Motion to Certify a Plaintiff Class Action) (quoting *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)). The court is satisfied that Wells meets this test. *See* Wells Tr. at 88–91.

## IV. CONCLUSION

 In accordance with the foregoing, the court finds that plaintiffs have met the necessary requirements under Fed.R.Civ.P. 23 for class certification and hereby ORDERS that:

1. This action shall proceed as a class action pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3) and Local Rule 200–6 on behalf of the following Class: All persons who purchased the common stock, including options to purchase the common stock, of Adobe Systems, Inc., from March 6, 1990 through May 24, 1990, and were damaged thereby;

Excluded from the Class are the defendants herein, members of the immediate families of the individual defendants, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors, predecessors in interest or assigns of any defendant;

2. Plaintiffs Richard Cloutier, Donald A. Wells, Jr., and Donald A. Wells, Jr. Keogh Plan, shall be representatives of said class;

3. The attorneys of record for the named Plaintiffs are hereby designated as counsel for the above defined class; and

4. Plaintiffs must file within 45 days of the filing date of this Order their proposed forms of notice for the pendency of this class action.

IT IS SO ORDERED.

---

11. Defendants make no challenge to plaintiff Courtier as a class representative, other than on the general ground that options traders have no standing.