Rodney **BERRY**, Plaintiff,

v.

Leroy **BACA**, Defendant.

No. CV 01–02069 DDP.

United States District Court, C.D. California.

Feb. 16, 2005.

Stephen Yagman, Marion R. Yagman, Yagman & Yagman & Reichmann, Venice Beach, CA, for plaintiff.

David D. Lawrence, Michael D. Allen, Franscell, Strickland, Roberts & Lawrence, Glendale, CA, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION WITHOUT PREJUDICE

PREGERSON, District Judge.

This matter comes before the Court on the plaintiffs' motions for class certification.[1] After reviewing and considering the papers filed by the parties, the Court denies the motion without prejudice.

## I. Background

### A. *The Underlying Allegations*

Roger Mortimer, Anthony Hart, and Rodney Berry sue Los Angeles County Sheriff Leroy Baca for pursuing a policy of deliberate indifference to their constitutional rights. The plaintiffs allege that they were unlawfully over-detained in the Los Angeles County jail. They were each kept in custody for a period ranging from twenty-six to twenty-nine hours after the court had authorized release.[2]

### 1. *R.D. Mortimer*

Roger Mortimer was arrested for charges of rape with a foreign object on April 1, 2000. (Def's Undisp. Fact No. 1.) On August 14, 2000, the jury announced a verdict of not guilty. (*Id.*, No. 9.) That same morning, at 11:45 a.m., the Superior Court authorized Mortimer's release. (*Id.*) Mortimer was released on August 15, 2000 at 4:57 p.m., twenty-nine hours and twelve minutes after the order for his release and seventeen hours after his release order was entered into the

Automated Justice Information System ("AJIS"), the computer system for booking, tracking, and release of inmates. (*Id.*, No. 10.)

### 2. *Anthony Hart*

Anthony Hart was arrested on August 14, 2000 on a robbery charge. (Def's Undisp. Fact Nos. 2 and 3.) On August 17, 2000, the Superior Court ordered his release from jail. (Allen & Jones Decl.) At the same time, the court also ordered him to appear at 9:30 a.m. that day in a different department on the same charge. (*Id.*) Hart was released from custody on August 18 at 2:02 p.m., twenty-nine hours and thirty-two minutes after the court authorized his release. (Def's Undisp. Fact No. 16.)

The paperwork from the Superior Court authorizing Hart's release did not arrive at the Inmate Reception Center ("IRC") of the Los Angeles County jail until the end of the day on August 17. (Def's Undisp. Fact No. 7.) Because the release form had an order to appear in a different department, personnel at IRC waited until the following morning to confirm with the court that Hart was to be released. (*Id.*) Once the release was confirmed, it was entered into the AJIS. (*Id.*, No. 8.) It took five hours and twenty-five minutes longer until Hart was released. (*Id.*)

### 3. *Rodney Berry*

Rodney Berry was arrested on a drug charge on October 5, 1999. (Def's Undisp. Facts No. 1.) After a jury trial resulted in a deadlocked jury and several further amended charges and pleas, the Superior Court ordered the charges dropped and authorized Berry's release on February 1, 2001 at 11:30 a.m. (*Id.*, Nos. 14–15.) Berry was released on February 2, 2001, at 2:02 p.m., twenty-six hours and thirty-two minutes after the Superior Court's order for his release, and sixteen-and-a-half hours after his release order was entered into the AJIS. (*Id.*, No. 16.)

---

1. These motions involve three cases: R.D. Mortimer v. Leroy Baca, CV 00–13002 DDP (SHx); Anthony K. Hart v. Leroy Baca, CV 01–01866 DDP (SHx); Rodney Berry v. Leroy Baca, CV 01–02069 DDP (SHx).

2. The facts underlying each case are taken from the documents filed by the parties as part of, or in response to, the defendant's September 16, 2002 motions for summary judgment.

### B.  Procedural History

After their releases, Mortimer, Hart, and Berry each filed suit in the Central District on December 12, 2000, February 27, 2001, and March 1, 2001, respectively.  Each plaintiff alleged that his constitutional rights were violated by the hours spent in detention after his court-authorized release from jail.

On May 29, 2003, this Court granted Sheriff Baca summary judgment in all three cases.  This order applied the ruling of *Brass v. County of Los Angeles*, 328 F.3d 1192 (9th Cir.2003), which also involved a civil rights claim brought by an over-detained inmate against the Los Angeles County jail.  However, unlike the plaintiffs before this Court, the claim in *Brass* focused on the specific County policy of releasing prisoners pursuant to court order only after the completion of processing all inmates already scheduled for release on that day.  In affirming the district court's grant of summary judgment for the County, the Ninth Circuit acknowledged that over-detention after court-ordered release may violate the detainee's constitutional rights, but that the detainee does not have "a constitutional right to have his release papers processed in any particular order ...." *Id.* at 1200.  The Court reasoned that "[t]o the extent Brass's claim rests on the County's policy or custom of not starting to process a particular day's releases until it has received all information, including wants and holds, relating to the prisoners scheduled for release, we cannot say the County thereby violated Brass's constitutional rights." *Id.* at 1201.

This Court found *Brass* controlling because the challenge to the policy and custom of Sheriff Baca rested on nearly identical grounds as those brought by Mortimer, Hart, and Berry.  On appeal, however, the Ninth Circuit disagreed.  It noted that the present plaintiffs do not challenge a specific release policy, but rather they are aggrieved by the County's implementation of its release policy *in toto*.  *Berry v. Baca*, 379 F.3d 764, 768 (9th Cir.2004). While subtle, this difference is crucial.  In the abstract, no particular release policy violates a detainee's rights so long as it is reasonable and justified "in light of the County's problems and responsibilities." *Brass, supra*, at 1201.  But should the County's administration of processing releases result in long delays, it is not immune from allegations that, in practice, the system amounts to a policy of deliberate indifference to the detainee's constitutional rights.  *Berry, supra*, at 768.  Accordingly, the Ninth Circuit reversed the summary judgment and remanded the case back to this Court.

### C.  The Williams Case

The plaintiffs now bring this motion for class certification.  They wish to represent others who were similarly over-detained by Sheriff Baca following a court-ordered release.  What makes this application for certification somewhat unusual is that these plaintiffs were previously involved in an identical class action brought against the County, *Williams v. County of Los Angeles*, No. 97–03826 CW (C.D. Cal. filed May 22, 1997). That case resulted in a settlement on November 27, 2002, with the County paying out $21,500,000 in damages on approximately 40,-000 claims.[3]  (*Williams,* Order re Settlement, Release and Dismissal of Claims in Class Action ("*Williams* Order"), ¶¶ 22, 42A.) The classes were limited temporally to those held in the custody of the Los Angeles Sheriff's Department between April 23, 1996 and December 31, 2001.  (*Williams* Order, Ex. B.) Thirty-two individuals opted out, including the three before this Court.  (*Williams* Order, Ex. D.;  Letter from Yagman to *Williams* Class Administrator of 8/12/02.)

## II.  Discussion

### A.  Standard for Class Certification Under Rule 23

Class actions in federal court are governed by Federal Rule of Civil Procedure 23 ("Rule 23").  Rule 23 provides a two-step process for determining whether class certification is appropriate.  First, Rule 23(a) sets forth four

---

**3.** *Williams* involved three classes of plaintiffs, only one of which suffered over-detentions.  The others classes included those who were subjected to invasive searches prior to release and those held in custody on a warrant for another person.

conjunctive prerequisites for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *and In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D.Cal. 1991).

Second, assuming the requirements of subdivision (a) are satisfied, the party seeking class certification must also demonstrate that the action falls within one of the three kinds of actions permitted under Rule 23(b). *See* Fed.R.Civ.P. 23(b); *see also In re Adobe Sys.*, 139 F.R.D. at 153. Specifically, the plaintiffs must demonstrate their claim is proper under Rule 23(b)(1), (b)(2), or (b)(3). An action is proper under Rule 23(b)(1) when there is either "a risk of prejudice from separate actions establishing incompatible standards of conduct" or the judgment in an individual lawsuit might adversely impact other class members. Schwarzer et al., *Federal Civil Procedure Before Trial*, ¶ 10:385 at 10–62–63 (1999). An action is proper under Rule 23(b)(2) if the defendant "has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole." *Id.* at 10–63. Finally, an action is proper under Rule 23(b)(3) if "questions of law or fact common to the class 'predominate' over questions affecting the individual members," and the Court determines that a class action is "superior to other methods available for adjudicating the controversy." *Id.* (discussing additional requirements of predominancy and superiority in Rule 23(b)(3) action).

In evaluating a motion for class certification, "[t]he court is bound to take the substantive allegations of the complaint as true." *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D.Cal.1985) (internal quotations omitted). Nonetheless, the plaintiffs bear the burden of establishing each of the required elements for class certification. *See id.* at 617 (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir.1982)).

### B. *Application*
#### 1. *The Effect of Williams*

■ At the outset, the Court addresses the defendant's contention that the plaintiffs should be barred from being certified as class representatives because they previously opted out of the *Williams* class. (Opp'n at 4–6.) The defendant argues that certifying persons who have already opted out of class actions would "lead to an endless succession of class action lawsuits all of which arise from the same litigation." (*Id.* at 4.) The plaintiffs' operative pleading does not contain class allegations. Moreover, the defendant points out, the usual reason to permit individuals to opt out of a class is to allow them "the freedom to litigate and pursue their individual claims." (*Id.* at 5 (bold in original).)

While this situation is unorthodox, the Court is not persuaded that these plaintiffs are barred from certification. The Federal Rules of Civil Procedure contain no such prohibition, and the defendant offers no other authority for this proposition.[4] While the defendant's fear of endless successive claims may be real enough, barring the plaintiffs from certification would not alleviate that threat. The *Williams* settlement bound only those individuals detained by the Los Angeles Sheriff's Department between April 23, 1996 and December 31, 2001, minus the thirty-two individuals who opted out. The Sheriff is still exposed to the possibility of over-detention suits brought by other detainees, whether the "opt-outs" from *Williams* or

---

**4.** The defendant does offer *Goff v. Menke*, 672 F.2d 702 (8th Cir.1982), in support. However, the plaintiff in *Goff* was a class member in the previous class action, and therefore bound by its outcome. This is not the case here.

those in custody after December 31, 2001. Thus, the County faces the possibility of over-detention lawsuits regardless of class certification. Certainly, nothing in *Williams* bars an individual released after December 31, 2001 from bringing a civil rights claim for unlawful over-detainment; nor does *Williams* bar that person, given that he meets the requirements of Rule 23, from class certification. The Court does not see how the current plaintiffs are different just because they opted out of *Williams*.

Moreover, certification would not serve merely to "increase litigation needlessly and enrich one cunning attorney." (Opp'n at 4.) If the named plaintiffs' claims are meritorious, and if, despite the *Williams* settlement, the County has engaged in numerous post-*Williams* violations of detainees' constitutional rights, then certification could likely serve all parties and the Court by facilitating the efficient adjudication of these claims. It is unlikely that the plaintiffs' counsel advised his clients to opt out of *Williams* in order to start his own class. The plaintiffs were ready to go to trial when this Court granted the defendant's motions for summary judgment on May 29, 2003. While the plaintiffs' attorney has recognized a possible litigation opportunity, this is not a proper consideration for the Court in determining certification under Rule 23.

2. *Federal Rule of Civil Procedure 23(a)*

a. *Numerosity*

The plaintiff must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. Rule 23(a)(1). While there is no precise threshold, courts have found that the numerosity requirement "has been satisfied when the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998). Classes with relatively small membership are regularly certified. *See Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982) (thirty-nine class members), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

In the instant case, the plaintiffs claim that "as many as 10,000 persons" may have similar claims. (Mot. at 3.) The defendant responds that the only persons who should be eligible for this class action are the thirty-two *Williams* "opt-outs." However, this ignores the possible post-*Williams* claimants. For instance, this Court has another case before it involving a plaintiff alleging civil rights violations against Sheriff Baca for over detainment following his court ordered release on June 21, 2004. *See Thomas v. Baca*, No. 04–08448 DDP (C.D. Cal. filed Oct. 12, 2004). There may be other such cases in the Central District.

While a plaintiff need not show the precise number of class members, he does bear the burden of showing that joinder is impracticable, and the mere allegation of numerosity is not sufficient to establish this element. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925 (11th Cir.1983). Here, the Court notes that the plaintiffs have only presented evidence of thirty-three possible class members so far, the thirty-two "opt-outs" and the plaintiff from *Thomas*. From this evidence, the Court cannot say that the plaintiffs have shown that joinder is impracticable.

At oral argument, the plaintiffs' counsel argued that his failure to demonstrate numerosity at this stage should not stand in the way of class certification because, he reasoned, if it becomes clear through the discovery process that joinder would have been practicable, the Court could decertify the class at that time. While this approach is arguably more efficient than the approach taken today, this Court may not disregard the requirements found in the Federal Rules. Rule 23 requires that the would-be class representative show that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Until this showing is made, a class may not be certified. The plaintiffs have not carried this burden. Accordingly, the Court denies the plaintiffs' motions without prejudice.

The Court notes that it may not be necessary for the parties to engage in comprehensive discovery in order for the plaintiffs to be certified. The Federal Rules merely require some reasonable showing of that joinder is

impracticable. For example, the plaintiffs may offer evidence in the form of declarations made by former detainees who qualify as class members. During oral argument on this motion, Mr. Yagman represented that he has been contacted by numerous people claiming that they were over-detained in Los Angeles County jail.

### b. *Commonality*

■ Second, the plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). In applying the commonality requirement, the Ninth Circuit has noted that slight differences among the class members will not prevent certification. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975). Commonality is satisfied if a plaintiff's grievances share a common question of law or fact. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (*per curiam*). The claims of all proposed class members need not be identical, as an alleged common course of conduct is sufficient to satisfy the commonality requirement. *Garfinkel v. Memory Metals, Inc.*, 695 F.Supp. 1397, 1402 (D.Conn.1988). Specifically, courts have found that a single common issue of law or fact is sufficient to satisfy the commonality requirement. *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D.Cal. 2000).

In the instant matter, Sheriff Baca contends that the commonality requirement has not been met because the reason for over-detainment may vary from case to case. (Opp'n at 8.) Thus, the defendant continues, each case will require an individualized inquiry in order to establish liability, causation, and damages. However, the Court is inclined to disagree for the following three reasons.

First, as proposed, the class members share common questions of fact, namely that they were all detained by Sheriff Baca beyond their court ordered release time.

Next, the proposed class members share a common question of law, namely whether the County's administration of processing releases results in such long delays as to amount to a policy of deliberate indifference to the detainees' constitutional rights. The Court

does not expect that individualized inquiries will dominate this case should it go forward as a class action. Recall that the plaintiffs do not challenge any specific release policy, any one of which may be reasonable. Rather, as the Ninth Circuit pointed out when reviewing this Court's summary judgment order, the plaintiffs object to the implementation of the Sheriff's release policy, *in toto*, which they claim amounts to a policy of deliberate indifference. If true, then liability and causation will be established for all the class members.

Third, the Court notes that an identical class of plaintiffs satisfied the commonality requirement in *Williams*. As Judge Woehrle had no problem devising or approving a suitable damages allocation in *Williams*, the Court trusts that the same could be done here.

For these reasons, the Court finds that the plaintiffs have satisfied the commonality requirement.

### c. *Typicality*

■ Rule 23(a) also requires the plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). As one district court explained:

A plaintiff's claim meets [the typicality] requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. The test generally is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*, 1993 WL 623310 at *4 (C.D.Cal.1993) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)). Minor conflicts do not make a plaintiff's claim atypical. *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y.1995).

In the instant case, the Court finds that the legal claims brought by the three named

plaintiffs are typical of the claims of the proposed class. All of the potential class members have the same injury, namely the hours spent in County custody following their court-ordered release. These injuries allegedly arose from the same source as those suffered by the named plaintiffs, namely the alleged policy of delaying release in such a way as to amount to the deliberate indifference to the plaintiffs' constitutional rights. Again, given the plaintiffs' legal theory, the particular policies at play in any single instance would not be critical. There would be little need for the individualized determinations against which the defendant cautions. Finally, the Court again notes that the *Williams* plaintiffs were found to have satisfied this element. Thus, the Court finds that the plaintiffs' claims are typical of the claims of the potential class.

### d. *Adequacy*

██ Next, the plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "Parties are generally considered to be adequate representatives of absent class members if there are no conflicts of interest between the representatives and class members and if the Court is persuaded that counsel for the representatives will vigorously pursue the action." *Burkhalter Travel Agency v. Mac-Farms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D.Cal.1991) (citing *General Tel.*, 457 U.S. at 156, 102 S.Ct. 2364).

The Court finds that the adequacy prong is satisfied. First, the interests of the plaintiff coincide with the interests of the proposed class because all the detainees share a common interest in being released promptly following a court order. Second, the Court finds that counsel for the plaintiff is qualified and experienced. Attorney Stephen Yagman is well-known in this district for his experience in litigating civil rights actions and class actions. The defendant points out that Mr. Yagman has encountered ethical problems in the past. Despite this, however, the Court finds that Mr. Yagman would fairly and adequately represent the interests of the class. Specifically, the Court also notes that disbursement of any award would likely be performed by a class administrator. Therefore, the Court finds that the plaintiff meets the requirements of Rule 23(a)(4).

### 3. *Requirements of Rule 23(b)*

In addition to satisfying the requirements of Rule 23(a), the plaintiffs must also qualify for one of the three types of class actions described in Rule 23(b). *See* Fed.R.Civ.P. 23(b). A class action is proper under Rule 23(b)(1) if "[t]here is a risk of prejudice from separate actions establishing incompatible standards of conduct," or if "[j]udgments in individual lawsuits would adversely affect the rights of other members of the class." Schwarzer et al., *Federal Civil Procedure Before Trial*, ¶ 10:385 at 10–63 (1999). A class action is proper under Rule 23(b)(2) if "[t]he party opposing the class has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole." *Id.* Rule 23(b)(2) actions are common where injunctive or declaratory relief is the primary relief sought on behalf of the class. *See id.* ¶¶ 10:399–400 at 10–66.

Finally, certification is appropriate under Rule 23(b)(3) if "[t]he questions of law or fact common to the class 'predominate' over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy." *Id.* ¶ 10:385 at 10–63. If a class is certified under Rule 23(b)(3), all absent class members must be notified of the action and informed of their right to "opt-out" of the litigation. *See id.* ¶ 10:386.

The defendant argues that certification is not appropriate because the plaintiffs fail to satisfy the requirements of Rule 23(b)(3). (Opp'n at 14–26.) However, the plaintiffs do not have to satisfy those requirements if they qualify for certification under another prong of Rule 23(b). In this case, the plaintiffs apply for certification under Rule 23(b)(1). (*See* Mot. at 7.)

██ Rule 23(b)(1)(A) authorizes the use of a class action when necessary to prevent possible adverse effects, either on the party opposing the class or on absent class members that might result if separate actions had

to be brought. In order to fall within Rule 23(b)(1)(A) (adverse effects on opposing party), there must be (1) a risk that separate actions will in fact be brought if a class action is not permitted, and (2) a possibility that individual suits will expose the opposing party to a serious risk of being put in a conflicted position. *See* Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 1773.

■ In this case, should the numerosity requirement be satisfied, it logically follows that the defendant could likely be subject to numerous separate actions absent certification. It is also possible that these actions could lead to different and conflicting judgments, a result that would make it difficult for Sheriff Baca to fashion a consistent release policy, should he have to, that would limit the County's exposure to claims. Accordingly, the Court finds that the plaintiffs qualify for class certification under Rule 23(b)(1)(A). For this reason, the Court need not reach the other Rule 23(b) issues.

### III. Conclusion

For the foregoing reasons, the Court denies these motions without prejudice.

IT IS SO ORDERED.